UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA,                   :
           Plaintiff,                             :
v.                                           :    **OPINION AND ORDER**
                                                :
JIFFY CLEANERS OF HARTSDALE, INC.,           :    16 CV 2428 (VB)
and WILTON CALDERON,                         :
           Defendants.                            :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff United States of America (the "government") commenced this action against defendants Jiffy Cleaners of Hartsdale, Inc. ("Jiffy Cleaners"), and its principal, Wilton Calderon ("Calderon"), to recover Jiffy Cleaners's outstanding federal tax liabilities and enjoin defendants from continuing to pay wages to employees without paying associated payroll taxes. On March 31, 2017, the Court entered a Default Judgment (the "Judgment") against defendants. (Doc. #19).

    Now pending is the government's motion to hold defendants in civil contempt and for sanctions. (Doc. #20).

    For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

    The parties' submissions reflect the following factual background.

I.    Default Judgment

    Jiffy Cleaners operated a dry cleaning business at 259 South Central Avenue, Hartsdale, New York. On April 1, 2016, the government commenced this action, alleging Jiffy Cleaners failed fully to meet its employment tax obligations for more than eleven years.

1

Although defendants were properly served with a summons and complaint, they failed to appear in this action, and did not answer or otherwise respond to the complaint. Accordingly, the government moved for default judgment. On March 31, 2017, the Court held a show cause hearing and entered the Judgment against defendants. Calderon attended the show cause hearing and was present when the Court entered the Judgment.

The Judgment required defendants to: (i) pay the government $110,853.48, for withheld federal income tax, Federal Insurance Contributions Act ("FICA") employee tax, employer FICA tax, and interest and statutory penalties due and owing on defendants' outstanding liabilities; (ii) timely file all Form 941 quarterly tax returns of Jiffy Cleaners; and (iii) pay all Jiffy Cleaners's outstanding liabilities due on each return required to be filed. Moreover, the Judgment enjoined defendants from failing to withhold employment taxes, including federal income and FICA taxes, and from assigning and/or transferring money or property from Jiffy Cleaners to any other person or entity. Finally, the Judgment required Calderon to: (i) execute and deliver monthly affidavits to the Internal Revenue Service ("IRS") to verify Jiffy Cleaners's deposits of withheld federal income tax, and employee and employer FICA tax; and (ii) notify the IRS if, within the next five years, Calderon intended to form, incorporate, own, or work in a managerial capacity for any other business entity, including any successor entity of Jiffy Cleaners.

On May 30, 2018, IRS revenue officer James Dwyer visited Jiffy Cleaners and reminded Calderon of defendants' obligations under the Judgment.

II. <u>Jiffy Station</u>

In January 2019, Calderon's wife, Violet Calderon ("Violet"), a career registered nurse, incorporated Jiffy Station Cleaners, Inc. ("Jiffy Station"). Violet opened a bank account for Jiffy

Station and listed Calderon as an authorized signatory. On banking documents, Calderon was designated Jiffy Station's "secretary." (Doc. #39 ("Defs. Mem.") Ex. 4 at ECF 2).[1]

That month, Jiffy Station entered into a lease for commercial property at 218A East Hartsdale Avenue, Hartsdale, New York, one mile away from Jiffy Cleaners's location at 259 South Central Avenue.

On January 31, 2019, Jiffy Cleaners shuttered its doors and surrendered its premises at 259 South Central Avenue.

On August 22, 2019, IRS revenue officer Celeste Green attempted to visit Jiffy Cleaners at 259 South Central Avenue but discovered Jiffy Cleaners was no longer in business. Officer Green then utilized an open source database to locate Jiffy Cleaners and was redirected to 218A East Hartsdale Avenue, the location of Jiffy Station. At that location, Officer Green observed a dry cleaning business with a sign reading "Jiffy Station Cleaners," and found Calderon behind the counter. (Doc. #22 ("Green Decl.") ¶ 6). Calderon told Officer Green that Jiffy Cleaners was evicted from 259 South Central Avenue and is now defunct; that his wife owns Jiffy Station; and that he merely "helps out" at the new business. (Id.).

On September 17, 2019, Officer Green returned to Jiffy Station, and again found Calderon behind the counter. This time, Calderon stated he was an officer of Jiffy Station, and that he transferred certain equipment from Jiffy Cleaners to Jiffy Station, including a sewing machine, clothing racks, furniture, and a mirror. According to Officer Green, Calderon also stated his wife opened Jiffy Station to "help him out." (Green Decl. ¶ 7).

---

[1] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

3

III.     Compliance with the Judgment

The government contends defendants have not complied with the Judgment. Specifically, the government argues defendants have failed to: (i) deposit withheld employee federal income tax, and employee and employer FICA tax, for the fourth quarter of 2017 and all four quarters of 2018, and have made insufficient deposits for the third quarter of 2017; (ii) withhold and pay all employment taxes, including federal income and FICA taxes, for the third and fourth quarters of 2017, and all four quarters of 2018; (iii) file Form 941 quarterly tax returns for the third and fourth quarters of 2017, and the fourth quarter of 2018; (iv) pay Form 941 tax liabilities for the third and fourth quarters of 2017, and the fourth quarter of 2018; and (v) comply with the Judgment's prohibition against transferring property from Jiffy Cleaners to any other entity without having first deposited the amounts required to be withheld and paid to the IRS.  The government further contends Calderon personally has failed to: (i) deliver monthly affidavits to the IRS confirming Jiffy Cleaners's compliance with its employment tax obligations; and (ii) notify the government of his managerial work for Jiffy Station.

**DISCUSSION**

I.     Legal Standard

"The Court's inherent power to hold a party in contempt is a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice."  Flaherty v. Filardi, 2009 WL 3762305, at *4 (S.D.N.Y. Nov. 10, 2009); see also Shillitani v. United States, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").[2]

---

[2]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

The Court may hold a party in civil contempt for failure to comply with a court order if: (i) the order with which the party failed to comply is "clear and unambiguous"; (ii) "proof of noncompliance is clear and convincing"; and (iii) "the party has not diligently attempted to comply [with the order] in a reasonable manner." CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016). A court order "is sufficiently clear and unambiguous if it leaves no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden." Id.

The moving party need not establish that the noncompliance is, or was, willful. Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 59 (2d Cir. 1984). Indeed, "[t]he fact that a prohibited act was done inadvertently or in good faith … does not preclude a citation for civil contempt, for the sanction is remedial in nature." Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 128 n.2 (2d Cir. 1979).

II.   Civil Contempt

The government argues the Court should hold defendants in civil contempt for failure to comply with the Judgment.

The Court agrees.

First, the Judgment is clear and unambiguous. It comprises short, enumerated paragraphs that clearly and unambiguously articulate defendants' obligations under same.

Second, the government's submission sufficiently details defendants' noncompliance with several provisions of the Judgment. And defendants do not deny their failure to comply with the Judgment, namely, by their failure to deposit with the IRS employee income tax for the fourth quarter of 2017 and all four quarters of 2018; their insufficient deposits for the third quarter of 2017; and their failures to withhold and pay federal income and FICA taxes, file Form 941 quarterly reports, and fully pay Form 941 quarterly liabilities for the third and fourth

quarters of 2017 and all four quarters of 2018.  Defendants also do not deny Calderon failed to deliver to the IRS monthly affidavits verifying Jiffy Cleaners's withheld income, and employee and employer FICA, taxes.

Defendants advance several arguments for why the Judgment was not violated, but each of these arguments fails.

First, defendants contend Calderon was never an officer of Jiffy Station, and that when he told Officer Green that he was, he "may have thought he was an officer because he was a signatory on the checking account." (Defs. Mem. ¶ 15).  To that end, defendants argue Calderon did not violate the Judgment by failing to notify the IRS that he intended to assume a managerial position with an entity other than Jiffy Cleaners.

The Court is not persuaded.  During both of her field visits, Officer Green found Calderon behind the counter at Jiffy Station.  During the second visit, Calderon suggested he was a manager of the business and that his wife opened Jiffy Station to "help him out." (Green Decl. ¶ 7).  Moreover, Calderon was an authorized signatory of Jiffy Station's bank account.[3]  Accordingly, the government has sufficiently demonstrated Calderon failed to comply with his obligation to inform the IRS of his intention to assume a managerial position of an entity other than Jiffy Cleaners.

Defendants next contend the Judgment is not binding on Calderon because he was not personally served with same.  Defendants are mistaken.

Federal Rule of Civil Procedure 65, which governs injunctions and restraining orders, states in pertinent part: "The order binds [parties] who receive actual notice of it by personal

---

[3]  Although defendants admit Calderon had been an authorized signatory of Jiffy Station's bank account, they allege he was removed as such at some unidentified time.

6

service or otherwise." Fed. R. Civ. P. 65(d)(2). "This Rule codifies the long settled principle that personal service of an injunction is not required so long as those whom the plaintiff seeks to hold in contempt had actual notice of the decree." Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d at 129 (collecting cases). "Notice is regarded as actual where the person charged with notice either knows the particular facts in question or is conscious of having the means to know them . . . . Actual notice embraces those things that reasonably diligent inquiry and exercise of the means of information at hand would disclose." John Wiley & Sons, Inc. v. Kirtsaeng, 2009 WL 3003242, at *2 (S.D.N.Y. Sept. 15, 2009).

Calderon was present at the show cause hearing on March 31, 2017, when the Court entered the Judgment. Accordingly, Calderon had actual notice of the Judgment and its terms.

Defendants then argue that because Officer Green's declaration states "Jiffy Cleaners failed to deliver affidavits to the IRS verifying" Jiffy Cleaners's compliance with its tax withholding responsibilities, whereas the Judgment requires Calderon to file such affidavits, the Judgment therefore is complicated and confusing. (See Defs. Mem. ¶ 13 (citing Green Decl. ¶ 3)) (emphasis added).

This argument borders on the frivolous. Calderon's obligations under the Judgment are clear and unambiguous. He cannot now rely on a typographical error in a declaration to foment ambiguity in the Judgment.

Next, defendants suggest the IRS's immediate location of Calderon and Jiffy Station upon learning Jiffy Cleaners was out of business, as well as Calderon's cooperation with revenue officers during field visits, demonstrate defendants did not attempt to evade the IRS or shirk their

obligations under the Judgment. But as noted above, willful noncompliance is not a requirement for a citation for civil contempt.[4] See Donovan v. Sovereign Sec. Ltd., 726 F.2d at 59.

Finally, defendants argue they did not "transfer" property to Jiffy Station in derogation of the Judgment because such property—e.g., a sewing machine, clothing racks, and a mirror—are forty-five years old and have no resale value.

This argument is frivolous. The Judgment proscribes defendants from "assigning and/or transferring money or property to any other person or entity." (Doc. #19 ¶ 8). Defendants violated such prohibition when they transferred Jiffy Cleaners's property to Jiffy Station. The Judgment does not authorize defendants to transfer Jiffy Cleaners's property they subjectively believe has no resale value.

As an additional matter, to the extent defendants suggest compliance with the Judgment was factually impossible and therefore noncompliance should be excused, they have failed to meet their burden to establish such inability "clearly, plainly, and unmistakably." Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995). The Judgment was entered on March 31, 2017. Even if Jiffy Cleaners was forcefully evicted from its premises in early 2019, and defendants now lack sufficient assets to satisfy the Judgment, defendants have not met their burden to establish an excusable inability to comply with same. Defendants have utilized some of Jiffy Cleaners's property to operate Jiffy Station, and voluntarily incurred new financial liabilities, including tax obligations, since the entry of the Judgment, by continuing to operate as Jiffy Cleaners, and then as Jiffy Station. See, e.g., United States v. Swingline, Inc., 371 F. Supp.

---

[4] Notwithstanding, defendants shuttered Jiffy Cleaners's doors the same month Violet formed a new entity—Jiffy Station—and defendants transferred Jiffy Cleaners's property to Jiffy Station. Thereafter, Calderon informed the IRS that Jiffy Cleaners was defunct. In the Court's view, these facts suggest an attempt to evade defendants' obligations under the Judgment.

37, 45 (E.D.N.Y. 1974) ("Inability to comply with a court order may be a defense to a charge of contempt, but not if the defendant created his own inability.").

For the reasons set forth above, the Court finds defendants to be in civil contempt for their intentional failure to comply with the Judgment.

III.     Sanctions

Having found defendants in civil contempt, the Court next considers the appropriate sanction.  Here, the government seeks coercive sanctions.  Specifically, the government contends Calderon should be prohibited:  (i) from further operating Jiffy Station; and (ii) "for a period of five years, from occupying any position within a business for which he would have the responsibility for collecting, truthfully accounting for, paying, withholding, or filing any taxes pursuant to the Internal Revenue Code, including . . . employment taxes."  (Doc. #21 ("Pl. Mem.") at 9).

The Court agrees.

"Federal courts have broad discretion to fashion remedies as equity requires, to ensure compliance with their orders." Cordius Trust v. Kummerfeld Assocs., Inc., 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2007).  To that end, courts "enjoy wide discretion in sanctioning litigants appearing before them," Novak v. Wolpoff & Abramson LLP, 536 F.3d 175, 177 (2d Cir. 2008), including the discretion to impose sanctions for contempt.  Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk, 738 F. App'x 19, 21 (2d Cir. 2018) (summary order).  Such sanctions may serve "to coerce compliance with a court order [and/or] to compensate" the harmed party.  CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d at 101.

"Determining the purpose of a sanction is a fact-specific inquiry that must be understood in the context of each individual case." CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d at 102.

If a court imposes a coercive sanction, which seeks "to enforce compliance with an order of the court," McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949), the court also must provide the contemnor an opportunity to purge his contempt.  In other words, the contemnor may free himself from the imposed sanction by committing an affirmative act, such as compliance with the order.  See Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828–29 (1994); see also CBS Broad. Inc. v. FilmOn.com., Inc., 814 at 101 (noting "[a]n opportunity to purge is essential" to any coercive sanction).

"Coercive sanctions must account for (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk, 738 F. App'x at 22.  "The ultimate consideration is whether the coercive sanction . . . is reasonable in relation to the facts." N.Y.S. Nat'l Org. of Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989).

Here, first, the harm threatened by Calderon's continued contumacy is the same as that which the government has experienced to date.  Indeed, Calderon's failure to comply with his obligations under the Judgment and federal tax law, while he continues to operate a dry cleaning business, has inflicted, and continues to inflict, significant financial harm on the government.

Second, the government's proposed sanctions would incentivize Calderon to comply with the Judgment and fulfill his and Jiffy Cleaners's obligations under same.

And third, imposing the sanctions the government seeks "will not wreak ruinous financial consequences" on Calderon.  See In re Various Grand Jury Subpoenas, 235 F. Supp. 3d 472, 484 (S.D.N.Y. Jan. 24, 2017).  The sanctions would not preclude Calderon from working; rather, they

10

would prohibit his operation of Jiffy Station and his ability to maintain a position in which he is responsible for collecting, truthfully accounting for, paying, withholding, or filing, a business's taxes.

Moreover, the Court deems the proposed sanctions "reasonable in relation to the facts" of this case. See N.Y.S. Nat'l Org. of Women v. Terry, 886 F.2d at 1353. Defendants' conduct has made it increasingly difficult for the government to enforce the Judgment and recover Jiffy Cleaners's unpaid federal tax liabilities.

Accordingly, for the above reasons, the government's proposed sanctions are warranted.

## CONCLUSION

The motion to hold both defendants in civil contempt and for sanctions against defendant Wilton Calderon is GRANTED.

Defendants are in contempt of the Judgment.

It is hereby ORDERED that Wilton Calderon is prohibited from operating Jiffy Station. Further, for a period of five years from the date of this Opinion and Order (i.e., today, through and including July 27, 2025), Wilton Calderon is prohibited from occupying any position within any business for which he would be responsible for collecting, truthfully accounting for, paying, withholding, or filing, any taxes pursuant to the Internal Revenue Code, including, but not limited to, employment taxes. Should defendants satisfy their obligations set forth in the Judgment, these sanctions shall be lifted following an appropriate application to the Court.

The Clerk is instructed to terminate the motion. (Doc. #20).

Dated: July 27, 2020
       White Plains, NY

                              SO ORDERED:

                              _____
                              Vincent L. Briccetti
                              United States District Judge